IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUSS MCKAMEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-00037 |
| | ) Judge Aleta A. Trauger |
| JUSTIN YERACE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

Plaintiff Russ McKamey filed suit against numerous media defendants ("Media Defendants") and one individual, Justin Yerace, in connection with an unauthorized documentary and social media posts made about him and his business—"a popular, immersive theater experience in the genre of horror on his private property, which he calls McKamey Manor." (Compl., Doc. No. 1 ¶ 18.) McKamey and the Media Defendants now having filed a Joint Stipulation of Voluntary Dismissal of the claims against the Media Defendants (Doc. No. 65), Justin Yerace is the only remaining defendant in this action. The Complaint asserts claims against Yerace for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count One); violation of the Stored Communications Act, 18 U.S.C. § 2707 (Counts Two & Three); invasion of privacy (Counts Four & Five); violation of the Tennessee Personal and Commercial Computer Act, Tenn. Code Ann. § 39-14-602 (Count Eight); intentional infliction of emotional distress (Count Nine); and conspiracy (Count Ten). (Doc. No. 1.) The plaintiff seeks compensatory and punitive damages. (*Id.* at 40–42.) Justin Yerace filed an Answer (Doc. No. 32), in which he admits many of the allegations in the Complaint.

Now before the court is the plaintiff's Motion for Partial Judgment on the Pleadings (Doc. No. 37), which seeks judgment in the plaintiff's favor on Counts One, Two, Four, and Eight, as well as a finding that he is entitled to punitive damages, based on Yerace's admissions. For the reasons set forth herein, the motion will be granted as to Yerace's liability on Count Four but otherwise denied.

## I. LEGAL STANDARD

Rule 12(c) provides that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for resolving a motion for judgment on the pleadings under Rule 12(c) mirrors the standard for resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). The only real "difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Desai v. Geico Cas. Co.*, 541 F. Supp. 3d 817, 821 (N.D. Ohio 2021) (citation omitted).

Thus, in ruling on a Rule 12(c) motion, the court must accept as true "all well-pleaded material allegations of the pleadings of the opposing party." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "[T]he motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581–82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

## II. FACTS

The plaintiff's claims under the federal and state statutes and his common law invasion of privacy claim are based on allegations that Yerace publicly admitted (in messages and videos

posted on Facebook and in the documentary about McKamey Manor ("Documentary")) that he hacked the plaintiff's email account, obtained emails from the plaintiff's email account, and posted at least sixty private and embarrassing email messages that he had obtained by hacking the plaintiff's email account. McKamey's present motion is premised specifically upon the following allegations and admissions in his Complaint (Doc. No. 1) and Yerace's Answer (Doc. No. 32), reproduced verbatim here [bracketed alterations in the original documents, unless denoted as [sic] or otherwise indicated]:

> 61. Defendant Yerace was one of approximately nine participating interviewees in the Documentary. In the Documentary, he contributed commentary on his experience as a former guest of McKamey Manor who had participated in a tour and his relevant conduct thereafter.
>
> ANSWER: Defendant admits the allegations contained in Paragraph 62 [sic] of this Complaint.
>
> 63. Defendant Yerace stated in the Documentary, "I wanted to do something. But I didn't know what kind of trouble I was gonna get into for getting into somebody's emails."
>
> ANSWER: Defendant admits the allegations contained in Paragraph 63 of this Complaint.
>
> 65. In the Documentary, Yerace explained the following retaliatory steps he took due to the "embarrassment" he felt after his McKamey Manor experience:
>
>> So, I started a Facebook page called McKamey Manor Exposed. I wanted it to be a place where people could actually come, say what they needed to say without having to worry about threats. The biggest thing we found though, was we actually got into Russ's emails. Russ has a very old email service and that's where he messed up. The company that Russ has for the email has a phone number. So, I called them, and I was like, 'Hey, yeah, I forgot my password.' So, they says, 'Okay, what's your name?' 'Russ McKamey.' He's like, 'Okay, when's the last time you were on your email?' And I was like, you know, I'm gonna make a good guess. I'll say, 'Oh, it was yesterday.' She's like, 'Yep, alright, that's correct.' I changed the

> password for my [sic] email address, and then I locked him out. We hit the jackpot.
>
> . . . .
>
> So I took those emails, I took screenshots, and I showed those. Here's the proof right here. This is, like, something you're never gonna see anywhere else. I put everything on my Facebook page[.]

ANSWER: Defendant admits that the stills included in Paragraph 66 of this Complaint appear to be taken from the Documentary, and that he made the statements included therein. Defendant denies all remaining allegations included in Paragraph 66 of this Complaint, and demands strict proof thereof.

66. The following are still captures of the Documentary – with closed captioning while Defendant Yerace gives this description of his hacking Mr. McKamey's email account and his exploits therefrom including the actual emails themselves which are displayed and enlarged in the Documentary:

[Photographs of stills, largely reiterating allegations in ¶ 65, omitted by the court.]

ANSWER: Defendant admits that the stills included in Paragraph 66 of this Complaint appear to be taken from the Documentary, and that he made the statements included therein. Defendant denies all remaining allegations included in Paragraph 66 of this Complaint, and demands strict proof thereof.

69. By impersonating Mr. McKamey to the "company" that was Mr. McKamey's "email service," Defendant Yerace obtained unauthorized access into Mr. McKamey's email account and further accessed the email service providers server where the electronic communications were stored. Thereby, Defendant Yerace unlawfully accessed a facility under the Stored Communications Act.

ANSWER: Insofar as the allegations included in Paragraph 69 of this Complaint contain questions of law, Defendant would state that he is not required to respond; however, insofar as the allegations of this Paragraph contain questions of fact, Defendant admits that he gained access to Plaintiff's e-mail address, and denies all remaining allegations and demands strict proof thereof.

71. In the Documentary, Defendant Yerace further admitted that he "changed the password" to Mr. McKamey's personal email account thereby preventing Mr. McKamey's authorized access to his stored communications.

Case 1:24-cv-00037   Document 66   Filed 12/23/24   Page 4 of 13 PageID #: 394

ANSWER: Defendant admits that the statements included in Paragraph 71 of this Complaint were included in the Documentary, but denies all remaining allegations in Paragraph 71 and demands strict proof thereof.

83. Defendant Yerace stated in a live video broadcasted into his closed Facebook group:

> I did talk to the Attorney General, and I was told that I could not make a statement because of what I said in the Hulu documentary. I admitted to hacking Russ and getting all kinds of information from hacking Russ, and they cannot use information wherein I admitted that I hacked this stuff off Russ illegally, they cannot use illegal information [. . .] that's why they didn't take my statement [. . .] It's literally because I quoted that I hacked Russ and they cannot use any of my statement because of the information and where I got it from [. . .] and that's the whole reason I don't have a statement with the AG because of what I said on the Hulu documentary.

ANSWER: Defendant admits that he made the statements included in Paragraph 83 of this Complaint; however, insofar as these allegations include questions of law, Defendant would state that he is not required to provide a response, and would deny the same.

84. Defendant Yerace posted in his closed Facebook group, "I looked it up and it said they can't charge you for just admitting to a crime [. . .] They need proof you actually did it [. . .] That and it was so many years ago[.]"

ANSWER: Defendant admits that he made the statements included in Paragraph 84 of this Complaint; however, insofar as these allegations include questions of law, Defendant would state that he is not required to provide a response, and would deny the same.

86. Defendant Yerace further stated in his closed Facebook group, "Russ is having a melt down . . . over his e-mails [. . .] He's trying to get legal help with what I said on the movie as well as me sharing screen shots that have been out for over 2 years now (Statute of limitations)."

ANSWER: Defendant admits that he made the statements included in Paragraph 86 of this Complaint; however, insofar as these allegations include questions of law, Defendant would state that he is not required to provide a response, and would deny the same.

88. Defendant Yerace further stated in a live video:

> But yes they are real. I'm not gonna fake 60, over 60 emails and just post them for you guys, I mean, that'd be crazy. We're all about telling the truth here. We don't do any lies, even if we're wrong, we'll tell ya. If there's something we're mistaken about, we'll let you know. But yea, the emails are real. I may or may not have gotten into his email, um, you know, that's what was there. The people that he emailed can tell you that they're real. If you guys ever talk to Holly again, um, Susan, whoever else he emailed there, they will simply tell you, "Yea, it's real. Everything's real."

ANSWER: Defendant admits that he made the statements included in Paragraph 83 [sic] of this Complaint; however, insofar as these allegations include questions of law, Defendant would state that he is not required to provide a response, and would deny the same.

90. The 60 emails Defendant Yerace selected from Mr. McKamey's account and posted to Defendant Yerace's Facebook group include the several emails exhibited in the Documentary and many more. The selection was intended to maximize the embarrassment of Mr. McKamey. These emails are still available to any group member. To avoid further invasion of Mr. McKamey's privacy, the emails will not be re-exhibited here. . . .

ANSWER: Defendant admits that several of the Plaintiff's emails appeared in the Documentary, but denies the remaining allegations included in Paragraph 90 of this Complaint, and demands strict proof thereof.

111. Defendant Yerace then obtained "60 emails" from Mr. McKamey's email account.

ANSWER: Defendant admits the allegations contained in Paragraph 111 of this Complaint.

## III. THE MOTION

The plaintiff's motion is premised upon his assertion that the defendant essentially admitted in his Answer to having engaged in conduct that constituted the hacking of his email account, in violation of federal and state law, and constituted an invasion of his privacy. (*See, e.g.*, Pl.'s Mem. Supp. Mot. J. Pleadings, Doc. No. 38 at 12 ("Clearly seduced by (ill-gotten) fame and attention, Defendant Yerace's unqualified boasts in the Documentary and subsequent social media

posts as to his exploits of Mr. McKamey—which he cannot and did not deny—have painted him into a corner with no escape from liability to Mr. McKamey.").

The defendant's response is that, while he admits to making the statements he is charged with making, both in the documentary and in Facebook posts, he has not admitted violating any law and did not admit the truth of the statements he admittedly made. (*See, e.g.*, Def.'s Resp. Opp. Mot. Partial J. Pleadings, Doc. No. 61, at 4 ("Defendant Yerace did make the . . . statement during the Documentary [as alleged in paragraph 63 of the Complaint], and therefore admits the same in his Answer; however, he did not admit anywhere to the veracity of the above statement, provide any details as to how the e-mails at issue came into his possession, or state that any action of his was unauthorized. Defendant Yerace also did not make any statements admitting that he had violated Plaintiff's right to privacy or any of the Federal Statutes alleged by Plaintiff to have been violated anywhere in his Answer." (citing Answer ¶ 63)); *id.* at 5 ("Defendant Yerace made the above statements in the Documentary [as alleged in paragraphs 66 and 67 of the Complaint], and therefore, admitted the same in his Answer; however, he did not admit to the veracity of the above statement, admit that he had actually carried out any of the actions contained in the above statement[s], provide any details regarding any other potential participants, or state that any action of his was unauthorized or a violation of Federal law anywhere in his Answer.").) He expressly concedes that he "admitted that he obtained" sixty emails from the plaintiff's email account, but, he contends, he did not "admit that he obtained said emails illegally or that any action of his was unauthorized." (*Id.* at 7.)[1] He asserts that, because he only admits to making the statements he is

---

[1] The defendant asserts that Rule 12 of the Tennessee Rules of Civil Procedure govern this action, since jurisdiction is premised upon diversity. He is incorrect on both counts. The court has federal question jurisdiction over the federal statutory claims and supplemental jurisdiction over the state law claims, as well as diversity jurisdiction. Moreover, even if jurisdiction were premised entirely on diversity, "[f]ederal courts are to apply state procedural rules in diversity cases only

alleged to have made but has not admitted to taking the actions he publicly boasted about doing, judgment on the pleadings is not appropriate.

The plaintiff's Reply asserts that Yerace "admitted to both statements *and* actions in his Answer," pointing out that the defendant admitted that he "gained access to Plaintiff's email address" (Answer ¶ 69) and "obtained 60 emails from Mr. McKamey's email account" (Answer admitting the allegations in Complaint ¶ 111). In addition, the plaintiff asserts that the defendant's denial of his veracity now should be disregarded because he expressly made statements in the Documentary asserting that his other statements were true. (*See* Doc. No. 62, at 4 ("[Yerace's] desperation for commendation foreclosed his ability to now deny that he did what he said—and insisted—he did.").)

## IV. DISCUSSION

### A. Counts One, Two, and Eight

Yerace's admission to having made statements is not equivalent to admitting that he did what he claimed to have done in those statements. While McKamey would certainly be able to impeach Yerace with those prior inconsistent statements, *see* Fed. R. Evid. 801(d)(2), Yerace might, in theory, persuade a jury that he was lying or bluffing when he made the statements, did not actually do the things he claimed to have done, and is not lying now. In other words, admitting to having *said* something is not equivalent to admitting to having *done* something.

Count One states a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, which was expressly enacted to "protect[] our Nation's computers from hacking." *Abu v.*

---

when the federal rules of procedure do not address the situation presented." *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 137 (6th Cir. 1990) (citing *Hanna v. Plumer*, 380 U.S. 460, 470 (1965)); *see also Lapinske v. City of Grand Haven*, No. 21-1309, 2022 WL 767707, at *5 (6th Cir. Mar. 14, 2022) ("Federal courts sitting in diversity jurisdiction 'are to apply state substantive law and federal procedural law.'" (quoting *Hanna*, 380 U.S. at 465)).

*Dickson*, 107 F.4th 508, 514 (6th Cir. 2024). "The [CFAA] subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information." *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (quoting 18 U.S.C. § 1030(a)(2)). The CFAA "defines the term 'exceeds authorized access' to mean "'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.'" *Id.* (quoting 18 U.S.C. § 1030(e)(6)). The statute specifically prohibits "outside hackers" from accessing a computer without permission, and "[v]iolators . . . face the possibility of criminal liability and . . . civil lawsuits from private parties." *Abu*, 107 F.4th at 514 (citing 18 U.S.C. § 1030(c), (g)).

Similarly, the Stored Communications Act ("SCA"), 18 U.S.C. § 2707, a violation of which is alleged in Count Two, creates a civil cause of action against anyone who knowingly or intentionally "accesses without authorization a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1); *see also id.* § 2707(a) (authorizing civil lawsuit). "[W]here the facts indisputably present a case of an individual logging onto another's e-mail account without permission and reviewing the material therein, a summary judgment finding of an SCA violation is appropriate." *Cardinal Health 414, Inc. v. Adams*, 582 F. Supp. 2d 967, 976 (M.D. Tenn. 2008).

And, in 2020, when Yerace allegedly accessed McKamey's email account, the Tennessee Personal and Commercial Computer Act ("TPCCA"), Tenn. Code Ann. § 39-14-602, provided, in relevant part, as follows:

> Whoever intentionally and without authorization, directly or indirectly:
>
> (1) Accesses any computer, computer system, or computer network commits a Class C misdemeanor. Operating a computer network in such a way as to allow anonymous access to that network shall constitute implicit consent to access under this part;

(2) Alters, damages, destroys, or attempts to damage or destroy, or causes the disruption to the proper operation of any computer, or who performs an act which is responsible for the disruption of any computer, computer system, computer network, computer software, program, or data which resides or exists internal or external to a computer, computer system, or computer network is punishable as in § 39-14-105;

(3) Introduces or is responsible for the malicious input of any computer contaminant into any computer, computer system, or computer network commits a Class B misdemeanor;

(4) Accesses, causes to be accessed, or attempts to access any computer software, computer network, or any part thereof, for the purpose of maliciously gaining access to computer material or to tamper maliciously with computer security devices including, but not limited to, system hackers, commits a Class A misdemeanor; or

(5) Makes or causes to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network commits an offense punishable as provided in § 39-14-105.[2]

Tenn. Code Ann. § 39-14-602(b) (Effective: July 1, 2016 to June 30, 2022). Section 39-14-604(a) authorizes "[a]ny person whose property or person is injured by reason of a violation" of the TPCCA to bring a civil action for damages resulting from such violation.

Yerace's liability under the CFAA, as alleged in the Complaint, is premised upon his having hacked into McKamey's email account without authorization. (Doc. No. 1 ¶ 102.) But Yerace has not admitted to hacking into McKamey's email account; he has admitted only to claiming that he hacked into McKamey's email account.

The plaintiff's claim under the SCA is premised upon Yerace's "impersonating Mr. McKamey to Mr. McKamey's email service provider, Yahoo," and thereby "intentionally obtain[ing] unauthorized access to a Yahoo email servicer, which is a facility through which electronic communication service is provided." (Doc. No. 1 ¶ 110.) Here, again, however, Yerace

---

[2] Section 39-14-105 makes theft of property or services a criminal offense.

admits that he *claimed* that he fraudulently obtained unauthorized access to a Yahoo email server in order to log into McKamey's email account without permission, but he has not actually admitted that he, in fact, was the person who logged into McKamey's email account without permission.

Count Eight asserts that Yerace, "[i]n obtaining access to Mr. McKamey's personal email account by impersonating Mr. McKamey, changing the password to block him from the account, and making copies of '60 emails,' Defendant Yerace obviously violated" the TPCCA. (Doc. No. 1 ¶ 171.) As with the federal statutory claims, however, Yerace does not admit to anything other than having "gained access to Plaintiff's e-mail address" and "obtained '60 emails' from Mr. McKamey's email account." (Doc. No. 1 ¶¶ 69, 111; Doc. No. 32 ¶¶ 69, 111.) These admissions, without more, are not sufficient to establish his liability under the TPCCA.

However unlikely a jury is to believe Yerace's denials at this point, his admissions are not sufficient, without more, to establish his liability for violating the CFAA, the SCA, or the TPCCA. McKamey is not entitled to judgment on the pleadings as to Counts One, Two, or Eight, and his motion will be denied as to these counts.[3]

**B.     Count Four**

Count Four asserts a claim for invasion of privacy, based on "intrusion upon seclusion." (Doc. No. 1 at 31.) In 2019, Judge Crenshaw of this court had the opportunity to consider the validity and elements of such a claim, noting that, while the Tennessee Supreme Court has not recognized intrusion upon seclusion as an actionable tort grounded in the invasion of privacy, the Tennessee Court of Appeals has done so. *Finley v. Kelly*, 384 F. Supp. 3d 898, 910 (M.D. Tenn. 2019) (Crenshaw, C.J.) (citing *Givens v. Mullikin ex rel. Est. of McElwaney*, 75 S.W.3d 383, 411

---

[3] It also bears pointing out that Yerace may not necessarily escape liability by simply proving that he personally did not hack into the plaintiff's email account, if, for example, the hacker acted as his agent.

(Tenn. 2002)). "[T]he scope of this tort is parallel to that contained in section 652B of the Restatement (Second) of Torts." *Id.* (quoting *Givens*, 75 S.W.3d at 411).

As set forth in the Restatement, to recover damages for invasion of privacy by intrusion upon seclusion, the plaintiff must plead and prove three elements: "(1) an intentional intrusion, physical or otherwise; (2) upon the plaintiff's solitude or seclusion or private affairs or concerns; (3) which would be highly offensive to a reasonable person." *Id.* at 611 (quoting *Burnette v. Porter*, No. W2010-01287-COA-R3CV, 2011 WL 4529612, at *4 (Tenn. Ct. App. Sept. 30, 2011); citing Restatement (Second) of Torts § 652B (1977)).

As Judge Crenshaw further explained:

> [T]he finding of an intrusion is tied to the plaintiff's expectation of privacy, and in order to prove that there has been an intentional intrusion into a private place, conversation or matter, the plaintiff will usually have to prove that there was: (1) an actual, subjective expectation of seclusion or solitude in that place, conversation or matter; and that (2) that expectation of privacy was objectively reasonable. Thus, for example, opening plaintiff's private mail and reading it without authority is an intrusion into privacy . . . . Likewise, hacking into a person's private computer and stealing personal correspondence [represents] an intentional intrusion on the victim's private affairs . . . .

*Id.* at 611 (internal quotations marks and citations omitted).

In the present case, McKamey had a reasonable expectation in the privacy of his email messages. *Accord Vernars v. Young*, 539 F.2d 966, 969 (3d Cir. 1976) ("Just as private individuals have a right to expect that their telephonic communications will not be monitored, they also have a reasonable expectation that their personal mail will not be opened and read by unauthorized persons."). As set forth above, Yerace admits that he "gained access to Plaintiff's e-mail address" and further admits the "allegations contained in Paragraph 111 of this Complaint" (Doc. No. 32, Answer ¶¶ 69, 111), thus admitting that he "obtained '60 emails' from Mr. McKamey's email account" (Compl. ¶ 111). Irrespective of whether Yerace was the person who actually hacked into the email account, and regardless of how he came to possess McKamey's emails, Yerace

admittedly accessed, opened, and read McKamey's mail. Although he argues in his Response to the Motion for Judgment on the Pleadings that he did not admit that he engaged in any "unauthorized" action (Doc. No. 61 at 7), no reasonable factfinder could conclude, based on any set of facts Yerace might present, that McKamey authorized him to read his emails, that Yerace believed that he was authorized to read McKamey's emails, or that McKamey had waived his right to privacy in his personal email. In this instance, McKamey's admissions that he accessed and obtained McKamey's email, and obviously did so without authorization, are sufficient to establish his liability for invading McKamey's privacy through intrusion upon seclusion.

The court finds that McKamey is entitled to judgment on the pleadings as to Count Four of the Complaint, though his damages remain to be proven at trial.

## V. CONCLUSION

The court finds that McKamey is entitled to judgment on the pleadings on the issue of Yerace's liability for intrusion upon seclusion as asserted in Count Four of the Complaint. His Motion for Judgment on the Pleadings (Doc. No. 37) will be granted as to that claim, with the issue of damages reserved for trial, and denied as to Counts One, Two, and Eight. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge